USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _9/26/2023___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINDA COHEN and ROLANDO COHEN,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, and MEISHA PORTER,

Defendants.

1:21-cv-06260-MKV

OPINION AND ORDER

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs are parents who commenced this action on behalf of their minor child, who has been classified as a student with a disability pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* The parties on each side have cross-moved for summary judgment. Plaintiffs seek an order reversing a portion of a State Review Officer's ("SRO") decision, finding that in the absence of evidence provided by Plaintiffs of their financial inability to pay the cost of their son's attendance at a private school placement, the Defendant New York City Department of Education ("DOE") is not obligated to reimburse Plaintiffs unless they provide proof that said costs have been paid in the first instance. Defendants seek summary judgment in their favor, affirming the SRO's decision and dismissing Plaintiffs' Complaint. For the reasons set forth below, Plaintiffs' motion for summary judgment is GRANTED, and Defendants' motion for summary judgment is DENIED.

# BACKGROUND[1]

During the 2018–2019 school year, M.C. was a fourteen-year-old boy who suffered from a brain injury due to a seizure disorder.  Def. Rp. 56.1 ¶ 2.  Because of the severity of his brain injury, M.C. is nonverbal and non-ambulatory, although he is able to communicate using non-vocal means and assistive technology.  Def. Rp. 56.1 ¶ 6.  It is undisputed that M.C.'s needs are severely intensive, requiring high levels of individualized support, adaptions, modifications, close monitoring, and resources.  Def. Rp. 56.1 ¶ 9.  As a result, for the 2018–2019 school year, M.C. was categorized as a student with a disability, as defined by the IDEA.  Pl. Rp. 56.1 ¶ 1.

Prior to the start of the 2018–2019 school year, the DOE's Committee on Special Education ("CSE") and M.C.'s parents—Plaintiffs here—met to discuss M.C.'s Individualized Education Program ("IEP") for the upcoming year.  Pl. Rp. 56.1 ¶ 2.  Following that meeting, Plaintiffs expressed apprehensions with the IEP and requested to reconvene with the CSE to discuss their concerns.  Pl. Rp. 56.1 ¶ 9.  Specifically, Plaintiffs were concerned with the manner in which the IEP meeting was conducted and opined that the CSE relied upon M.C.'s IEP from the prior year, which Plaintiffs claimed had been invalidated.  Pl. Rp. 56.1 ¶ 9.  The DOE, however, denied Plaintiffs' request to reconvene the IEP meeting.  Pl. Rp. 56.1 ¶ 11.

Subsequently, by Prior Written Notice, DOE recommended that M.C. attend a certain New York City public specialized education placement during the 2018–2019 school year.  Pl. Rp. 56.1 ¶ 14.  Instead, Plaintiffs sent DOE a Ten-Day Notice, indicating their intent to unilaterally enroll M.C. at a private school, the International Institute of the Brain ("iBRAIN") for the 2018–2019 school year.  Pl. Rp. 56.1 ¶¶ 12, 15.  By this time, Plaintiffs had already executed an Enrollment

---

[1] The following facts are drawn from the Parties' various Local Rule 56.1 statements, including Defendants' Counter Statement to Plaintiffs' Local Rule 56.1 Statement [ECF No. 34] ("Def. Rp. 56.1") and Plaintiffs' Counter Statement to Defendants' Local Rule 56.1 Statement [ECF No. 36] ("Pl. Rp. 56.1").  All facts are undisputed unless otherwise stated.

Contract and School Transportation Service Agreement with iBRAIN for M.C.'s enrollment.  Pl. Rp. 56.1 ¶ 12–13.

After informing DOE of their intention to enroll M.C. at iBRAIN, Plaintiffs filed a Due Process Complaint ("DPC"), alleging that DOE failed to provide M.C. with a free and appropriate public education ("FAPE") for the 2018–2019 school year as required by the IDEA and that M.C.'s placement at iBRAIN was an appropriate unilateral placement.  Pl. Rp. 56.1 ¶ 16.  Plaintiffs requested that as a result, DOE provide funding for M.C.'s placement and related services, including special transportation, directly to iBRAIN for the 2018–2019 school year.  Pl. Rp. 56.1 ¶ 16.  Plaintiffs' DPC was assigned to Impartial Hearing Officer ("IHO") Stephanie Seto.  Pl. Rp. 56.1 ¶ 19.

After several hearings, some of which included documentary and testimonial evidence entered on the record, IHO Seto issued a Findings of Fact and Decision ("FOFD"), which determined that DOE did not offer M.C. a FAPE during the 2018–2019 school year, Plaintiffs' unilateral placement at iBRAIN was appropriate, and the equities favored Plaintiffs' request for public funding of M.C.'s placement at iBRAIN and related services.  Pl. Rp. 56.1 ¶¶ 18–19.  In relevant part, IHO Seto held that Plaintiffs were entitled to direct tuition funding (instead of reimbursement upon proof of payment), asserting that the IDEA does not obligate parents to demonstrate need for direct payment of an appropriate unilateral placement.  Pl. Rp. 56.1 ¶ 20.  IHO Seto reasoned that parents are not obligated to disclose financial information or otherwise prove an inability to front tuition costs for tuition reimbursement under the IDEA because such imposition would create an inequitable standard.  Pl. Rp. 56.1 ¶ 21.

Thereafter, DOE appealed IHO Seto's FOFD, arguing that she erred in finding that DOE did not offer M.C. a FAPE during the 2018–2019 school year, Plaintiffs' unilateral placement at iBRAIN was inappropriate, and equitable considerations disfavored Plaintiffs.  Pl. Rp. 56.1 ¶ 22.

DOE also requested reversal of IHO Seto's award of direct payment of tuition and transportation costs at iBRAIN because Plaintiffs failed to demonstrate an inability to pay the costs of M.C.'s tuition, and therefore, were not entitled to direct tuition funding.  Pl. Rp. 56.1 ¶ 23.

State Review Officer ("SRO") Steven Krolak reviewed IHO Seto's FOFD on appeal.  SRO Krolak sustained IHO Seto's findings that DOE did not offer M.C. a FAPE for the 2018–2019 school year and that Plaintiffs' unilateral placement at iBRAIN was appropriate, but reversed IHO Seto's award of direct tuition payment.  Pl. Rp. 56.1 ¶ 23.  SRO Krolak acknowledged that Plaintiffs demonstrated an obligation to pay iBRAIN by offering the enrollment contract with the school into evidence, but found that the record reflected no evidence related to Plaintiffs' ability to pay the private tuition. Pl. Rp. 56.1 ¶ 25.  SRO Krolak concluded that because Plaintiffs failed to demonstrate a lack of financial resources, Plaintiffs were entitled to tuition reimbursement *only* rather than an obligation to pay iBRAIN.  Pl. Rp. 56.1 ¶ 25.

## PROCEDURAL HISTORY

Plaintiffs filed this action alleging that SRO Krolak's decision erred in finding that direct retrospective payment to iBRAIN for M.C.'s tuition and related services is contingent upon proof of Plaintiffs' inability to pay.  Plaintiffs now move for summary judgment seeking an order requiring DOE to fund their son's educational placement for the 2018–2019 school year as direct retrospective payment to iBRAIN.  In support of their motion [ECF No. 21], Plaintiffs filed a Memorandum of Law [ECF No. 25] ("Pl. Br.") and their Local Rule 56.1 Statement [ECF No. 24].  Defendants subsequently cross-moved for summary judgment [ECF No. 31], filing a Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion [ECF No. 32] ("Def Opp. & Br."), as well as their Local Rule 56.1 Statement [ECF No. 33].  Defendants also filed a Counter Statement to Plaintiffs' Rule 56.1 Statement [ECF No. 34].  Plaintiffs submitted a Reply Memorandum of Law in Further Support

and in Opposition of Defendants' Motion [ECF No. 35] ("Pl. Rp. & Opp."), and a Counter Statement to Defendants' Rule 56.1 Statement [ECF No. 36].  Defendants also filed a Reply Memorandum of Law in Further Support of their Cross-Motion [ECF No. 37] ("Def. Rp.").

**LEGAL STANDARD**

## I.   The IDEA Generally

The IDEA is designed "to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(d)(1)(A).  To make sure these children are provided with a FAPE, "[t]he IDEA requires that states offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 482 (2d Cir.2002).

The IDEA allows parents and students to file a due process complaint and request an impartial due process hearing conducted by an IHO "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A); *see A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir. 2005).  An IHO's decision may, in turn, be appealed to a State Review Officer ("SRO"), who is an officer of the State's Department of Education.  *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003).  Generally, either "party aggrieved" by the findings of an SRO "shall have the right to bring a civil action" in either state or federal court.  20 U.S.C. § 1415(i)(2)(A); *see M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 225 (2d Cir. 2012).

## II.   Summary Judgment in the IDEA Context

In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but "the procedure is in substance an

appeal from an administrative determination, not a summary judgment motion." *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (citing *M.H.*, 685 F.3d at 225). A motion for summary judgment in an IDEA case "often triggers more than an inquiry into possible disputed issues of fact." *M.H.*, 685 F.3d at 225 (citing *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005)). The district court therefore "engage[s] in an independent review of the administrative record and make[s] a determination based on a preponderance of the evidence." *M.H.*, 685 F.3d at 240; § 1415(i)(2)(C)(iii).

In conducting an independent review, courts "must give due weight to [the state administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *C.S.*, 990 F.3d at 165 (citing *M.H.*, 685 F.3d at 240). On "issues of law," however, "such as the proper interpretation of the federal statute and its requirements, courts owe no deference to state hearing officers." *Id.* (quoting *Lillbask*, 397 F.3d at 82) (internal quotations omitted).

## **DISCUSSION**

The parties' dispute centers on a disagreement regarding the form of equitable relief to which Plaintiffs are entitled under the IDEA and does not involve any disputes contained in the factual record. As this is an issue of law relating to the equitable remedies available under the IDEA statute, which does not concern "specialized knowledge" on educational policy, the Court "owe[s] no deference to state hearing officers." *C.S.*, 990 F.3d at 165.

Generally, Plaintiffs argue that they are entitled to an order requiring Defendants to fund the cost of M.C.'s attendance at iBRAIN for the 2018-2019 school year as *direct* retrospective payment to iBRAIN. Conversely, Defendants seek to affirm the SRO's ruling that, because Plaintiffs have not demonstrated an inability to pay, Plaintiffs are entitled to retrospective

*reimbursement* for those costs and *only upon proof that said costs had been paid in the first instance*, which Plaintiffs here failed to prove in the administrative record.

**I.    The IDEA Authorizes the Court to Order Defendants to Fund the Full Amount of Tuition via Direct Payment**

In *School Committee of the Town of Burlington v. Department of Education of Massachusetts,* the Supreme Court held that Congress intended retrospective *reimbursement* to parents by school officials as an available remedy in a proper case under the IDEA.  471 U.S. 359, 370–71 (1985).  Parents can qualify for tuition reimbursement if (1) the district fails to provide a child with a FAPE as required under the IDEA, 20 U.S.C. § 1412(a)(1)(A), and (2) the alternative private educational services obtained by the parents were appropriate to their child's needs. *Florence County Sch. Dist. Four v. Carter ex rel. Carter,* 510 U.S. 7, 12 (1993); *Burlington,* 471 U.S. at 370.  If those *Burlington-Carter* factors are met, then both administrative review officers and courts are required to evaluate the equities in considering a tuition reimbursement claim. *Carter,* 510 U.S. at 12.

While the *Burlington-Carter* factors initially applied to reimbursement, the Second Circuit has since held that "where the equities call for it, *direct* payment fits comfortably within the *Burlington-Carter* framework" because "like reimbursement, direct payment [by the DOE to the school] that provided the required educational program 'merely requires [the school district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP.' " *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 453 (2d Cir. 2014) (citing *Burlington*, 471 U.S. at 370–71).  The Second Circuit reasoned that "the broad spectrum of equitable relief contemplated under the IDEA encompasses, in appropriate circumstances, a 'direct-payment' remedy" for parents of disabled children who opt for a unilateral

private placement. *E.M.*, 758 F.3d at 453 (citing *Frank G. v. Board of Educ. of Hyde Park*, 459 F.3d 356, 371 (2d Cir. 2006)).

Although the Second Circuit has not expressly weighed in on the issue, courts in this District have also held that courts may award direct payment to a private school *retrospectively*, and not solely prospectively. *See Maysonet v. N.Y.C. Dep't of Educ.*, No. 22 CIV. 1685 (LGS), 2023 WL 2537851, at *5 (S.D.N.Y. 2023); *P.K. ex rel. S.K. v. N.Y.C. Dep't of Educ.*, 819 F. Supp. 2d 90, 118 (E.D.N.Y. 2011), *aff'd*, No. 11–3525, 2013 WL 2158587 (2d Cir. 2013); *Mr. & Mrs. A v. N.Y.C. Dep't of Educ.*, 769 F. Supp. 2d 403, 406 (S.D.N.Y. 2011).  On the facts presented, in those cases, the courts have ruled that, "[w]here . . . parents lack the financial resources to 'front' the costs of private school tuition, and in the rare instance where a private school is willing to enroll the student and take the risk that the parents will not be able to pay tuition costs—or will take years to do so—parents who satisfy the *Burlington* factors have a right to *retroactive direct tuition payment relief*." *Mr. & Mrs. A.*, 769 F. Supp. 2d at 428 (emphasis added).

## II.   The IDEA Does Not Require Plaintiffs Show
## Financial Inability for Direct Retrospective Payment

While Defendants concede that "the IDEA may authorize a retroactive direct tuition remedy, such as direct payment to the private school," they argue that, as the SRO ruled, "it is only granted in appropriate circumstances where Plaintiffs meet their burden of demonstrating financial inability."  Def. Opp. at 9.  Defendants argue that because Plaintiffs "failed to introduce any evidence demonstrating financial hardship," Plaintiffs are not entitled to direct retrospective payment but instead must pay the tuition and thereafter seek reimbursement (with proof of payment by Plaintiffs).  Def. Opp. at 1.  Plaintiffs disagree, arguing that the IDEA does not require the parent of a student with disabilities to establish a lack of financial resources in the first instance

to receive an award of direct payment of tuition.  Pl. Br. at 1.  This is the precise legal issue framed by the cross-motions before the Court.

The Court is not aware of any legal precedent within this Circuit directly addressing whether parents—as a necessary prerequisite—must show their inability to pay for appropriate unilateral placement in order to receive an award of *retrospective* direct tuition funding.  The few cases in this Circuit and District that have awarded direct payment have at least mentioned a parent's financial inability to pay tuition in their decisions.  *See e.g.*, *E.M.*, 758 F.3d at 453 n.14 (noting when a proposed IEP is inadequate "*and the disabled child lacks the financial means* to meet the cost of private-school tuition pending a final decision on the merits," courts *may* order the public school district to pay, *prospectively*, the cost of private-school tuition) (emphasis added); *Mr. & Mrs. A*, 769 F. Supp. 2d at 406 (finding "[w]here, as here, *parents lack the financial resources* to 'front' the costs of private school tuition . . . parents who satisfy the *Burlington* factors have a right to retroactive direct tuition payment relief") (emphasis added); *Connors v. Mills*, 34 F. Supp. 2d 795 (N.D.N.Y. 1998) (noting in *dicta* that the school district *could be* required "to pay tuition directly" to the private school "once the *Burlington* prerequisites . . . are met, *and a parent shows that his or her financial circumstances eliminate the opportunity for unilateral placement* in the non-approved school") (emphasis added); *A.R.*, 2013 WL 5312537, at *11 (accepting "[p]laintiffs undisputed evidence that *she could not afford to pay the tuition*" and granting relief in the form of a direct payment).  Indeed, in each of these cases, the parent plaintiffs demonstrated financial hardship.  However, none of the courts directly held that such a showing of financial hardship was a necessary prerequisite for such direct tuition payment.

Recently, another Court in this District faced the issue head on, asking "whether parents *must* show their inability to pay in order to receive an award of direct tuition funding." *Maysonet v. N.Y.C. Dep't of Educ.*, No. 22 CIV. 1685, 2023 WL 2537851, at *3 (S.D.N.Y. 2023) (emphasis

added).  In that case, like here, the parents challenged an SRO's express finding that the parents had the burden to show financial need and failed to do so, arguing direct retrospective tuition is available under the IDEA without such a showing.  *Id*. at *3.  However, in *Maysonet*, the court did not ultimately decide the issue because "after the administrative proceedings and at the [c]ourt's request, [the parents] proffered evidence of their inability to pay tuition and other costs."[2]  *Id*.

Though both *Carter* and *Burlington* state that parents who unilaterally place their child in a private school " 'do so at their own financial risk,' " *Carter*, 510 U.S. at 15 (quoting *Burlington*, 471 U.S. at 373–74), the Supreme Court made this statement in the context of cases where the *Burlington* prerequisites had not yet been satisfied.  But in cases, such as this, where it has already been established that the district has failed to provide a child with a FAPE and (2) the private educational services obtained by the parents were appropriate, an award for direct retrospective payment would merely require the district to pay " 'expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP.' " *E.M.*, 758 F.3d at 453 (quoting *Burlington*, 471 U.S. at 370–71); *see also T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009).

To place a burden on parents to establish financial inability to pay for an alternative private placement, when the district has failed to provide their child a "*free and appropriate public education*" as required under the IDEA, entirely contradicts the clear legislative mandate that special education placements are, by definition, to be provided at "*no cost to the parent*."  N.Y. Educ. Law § 4401(1) (McKinney).  The consistent message of this District's decisions is that a child's access to a FAPE "cannot be made to depend on his or her family's financial ability to 'front' the costs of private school tuition." *Mr. & Mrs. A*, 769 F. Supp. 2d at 406.  To require

---

[2] At the District Court's request, plaintiffs filed a sworn affidavit from Maysonet stating that neither she nor her family had the financial means to front these costs.  2023 WL 2537851, at *3.

otherwise will inevitably result in disparate requirements for parents of disabled children based on financial resources, notwithstanding the IDEA's requirement that *all* children with disabilities are entitled to a *free* education.  Accordingly, the Court finds that Plaintiffs are not required to establish financial hardship in order to seek direct retrospective payment to iBRAIN for their son's 2018–2019 school year.

### III.   The Equities Favor Granting Full Direct Payment of Retrospective Tuition Without Proof of Parents' Inability to Pay.

Here, Plaintiffs have already satisfied the *Burlington-Carter* prerequisites.  Indeed, Defendants seek to affirm SRO Krolak's decision, which in pertinent part, *sustained* IHO Seto's finding that DOE (1) did not offer M.C. a FAPE for the 2018–2019 school year and that (2) Plaintiffs' unilateral placement at iBRAIN was appropriate—*i.e.*, the *Burlington-Carter* factors. Pl. Rp. 56.1 ¶ 23.  For that reason, the Court does not engage in extended discussion of either factor, but rather finds them satisfied based on the in-depth factual analyses in both IHO Seto's and SRO Krolak's decisions.  As such, the Court need now only evaluate the equities in considering appropriate relief for Plaintiffs, if any, in this case.  *Carter,* 510 U.S. at 12.

The IDEA provides courts broad discretion to grant "such relief as . . . is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii).  Supreme Court decisions interpreting this provision emphasize the plain meaning of this phrase, noting the breadth of discretion given to fashion appropriate relief in each case.  *See Burlington*, 471 U.S. at 369 ("The ordinary meaning of [the IDEA] confers broad discretion on the court."); *Carter*, 510 U.S. at 15–16 ("[O]nce a court holds that the public placement violated the IDEA, it is authorized to grant such relief as the court determines is appropriate. . . ." (cleaned up)).

Plaintiffs seek *retrospective* relief for the education and services that iBRAIN *already rendered* to M.C. in the 2018–2019 school year.  As the Second Circuit expressly stated, "where

the equities call for it, *direct* payment fits comfortably within the *Burlington–Carter* framework"
because "direct payment to the private school . . . 'merely requires [the school district] to belatedly
pay expenses that it should have paid all along and would have borne in the first instance had it
developed a proper IEP.' " *E.M.*, 758 F.3d at 453 (quoting *Burlington*, 471 U.S. at 370–71); *see
also T.P.*, 554 F.3d at 252.  The equities further weigh in favor of direct payment to iBRAIN
because, as SRO Krolak's decision noted, Plaintiffs demonstrated a legal obligation to pay
iBRAIN by offering the enrollment contract with the school into evidence.  Pl. Rp. 56.1 ¶ 25.  *Cf.
E.M.*, 758 F.3d at 456–60 (holding that parent had standing to pursue a claim for direct retroactive
tuition funding under the IDEA based on her contractual obligation to pay the private school).

Moreover, as this Court has previously found, Plaintiffs were not required to establish
financial hardship to seek direct retrospective payment—*after* the district failed to provide M.C.
with a FAPE for the 2018–2019 school year—because such a burden would contradict the IDEA's
core purpose of "ensur[ing] that all children with disabilities have available to them a *free
appropriate public education*[.]" 20 U.S.C. § 1400(d)(1)(A).  To require parents to fund their
children's education in the first instance, unless they demonstrate an inability to pay—as the SRO
did here—skews the equities underlying the IDEA and cases applying that law.  Direct payment
to the school simply requires the DOE to belatedly fund expenses that it was obligated to pay all
along.  *E.M.*, 758 F.3d at 453.  Thus, where, as here, a private school is willing to enroll the student
and the risk that it will take years to obtain payment, parents who satisfy the Burlington factors
have a right to retroactive direct tuition payment.  See *Mr. & Mrs. A.*, 769 F. Supp. 2d at 428.

## CONCLUSION

For the foregoing reasons, Plaintiffs motion for summary judgment seeking reversal of the
portion of SRO Krolak's decision that direct retrospective payment to iBRAIN for M.C.'s tuition
and related services is contingent upon proof of the Plaintiffs' inability to pay is GRANTED, and

Defendants are required to fund M.C.'s educational placement and related services, including special transportation, for the 2018–2019 school year as direct retrospective payment to iBRAIN. Accordingly, Defendants' motion for summary judgment is DENIED.  The Clerk of Court is respectfully requested to close Docket Entry Nos. 21 and 31.


**SO ORDERED.**

**Date:  September 26, 2023**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**